# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | |
|---|---|
| ANNA M. MEDLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Case No. 2:17-CV-88 NAB |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM AND ORDER</u>

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Anna M. Medley's application for disability insurance benefits under the Social Security Act. Medley alleged disability due to problem with brain function and depression. (Tr. 176.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.]

In this action, Medley contends that the administrative law judge's ("ALJ") opinion is not supported by substantial evidence. In support, she states that the ALJ erred in giving limited weight to a consultative psychologist and her treating psychiatric nurse while giving significant weight to a non-examining psychologist. She also contends that the ALJ erred when concluding that she would be off task to a minimal degree when formulating the residual functional capacity ("RFC") determination. The Commissioner responds that the administrative law judge's decision is supported by substantial evidence in the record as a whole and should be affirmed. Based on the following, the Court will reverse and remand the Commissioner's decision.

## Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

## Discussion

Medley asserts that the ALJ improperly weighed the medical evidence in her case, did not include all of her limitations in the RFC determination, and failed to fully develop the record.

### Evaluation of Medical Evidence

First, Medley contends that the ALJ improperly weighed the medical evidence in this action. The Court will address each medical opinion separately.

**State Agency Psychological Consultants**

Two state agency psychologists provided opinions regarding Medley's residual functional capacity. Dr. Thomas Spencer examined Medley on May 11, 2015. Dr. Stanley Hutson reviewed Medley's medical records and prepared on opinion dated June 29, 2015. "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i)[1]. "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence," except for the determination of disability. 20 C.F.R. §§ 404.1512(b)(8), 404.1527(e)(2)(i). "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants or other program physicians or psychologists." 20 C.F.R. § 404.1527(e)(2)(i). Their opinions are evaluated under the standards outlined in 20 C.F.R. § 404.1527(c).

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite her impairments and her physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment

---

[1] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. § 404.1527, the court will use the regulations in effect at the time that this claim was filed.

relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

### Dr. Thomas Spencer

Dr. Spencer examined Medley on May 11, 2015 and prepared a psychological evaluation on May 14, 2015. (Tr. 239-242.) Dr. Spencer also reviewed Medley's medical records. (Tr. 239.) Dr. Spencer observed that Medley had no impairment in grooming or hygiene. (Tr. 241.) He noted that her eye contact was intermittent, while her speech was flat and with a marked delay. (Tr. 241.) He also noted that her motor behavior was delayed. (Tr. 241.) Dr. Spencer wrote that Medley was cooperative, but had trouble answering questions. (Tr. 241.) He opined that her insight and judgment appeared questionable. (Tr. 241.)

Medley was alert and oriented to person, place, and event, but thought it was September 2000. (Tr. 241.) In testing, she related poorly to proverbs and similarities, but demonstrated a decent working knowledge of social norms. (Tr. 241.) She exhibited an impairment in long term memory. (Tr. 241.) She could not spell the word "world." (Tr. 241.) She could not complete simple arithmetic. (Tr. 241.) Dr. Spencer diagnosed Medley with major depressive disorder, recurrent, severe without psychotic features rule out neurocognitive disorder and alcohol abuse v. dependence, by history. (Tr. 241.)

In his conclusion, Dr. Spencer stated that Medley appeared capable of understanding and remembering little more than simple instructions and engaging and persisting with little more than simple tasks. (Tr. 242.) He opined that she exhibited marked impairment in her ability to interact socially and adapt to the environment. (Tr. 242.) He also opined that she was not capable of managing her benefits without assistance. (Tr. 242.)

The ALJ gave limited weight to Dr. Spencer's opinion. (Tr. 22.) The ALJ stated that Medley "had mental status findings that might have suggested the level of impairment by Dr. Spencer at the one-time evaluation." (Tr. 22.) The ALJ discounted Dr. Spencer's opinion, however, because Medley displayed a working knowledge of social norms, presented on her own at the correct date and time for the appointment, maintained self-care, helped with household chores, and kept up with her insurance premium payments. (Tr. 22.)

Based on the evidence in the record as a whole, the Court finds that the ALJ erred in assigning little weight to Dr. Spencer's opinion. First, Dr. Spencer's analysis is consistent with the other evidence in the treatment record. During her interview with the SSA office, the interviewer wrote the following:

> Claimant appeared to have severe cognitive issues. It was a difficult interview. Claimant could not answer my questions if the answer was not already written down on her pre-interview worksheet that she was reading from. I had to repeat most questions. When she answered, she would jumble her words. … She had great difficulty getting said what she wanted to tell me and sighed in frustration many times. I felt very badly for her. She was trying her best for me and it was quite difficult for her. None of it appeared faked or like she was acting.

(Tr. 173.) Medley completed an Adult Function Report as part of her application for benefits. (Tr. 194-204.) The report contained some spelling errors and incomplete sentences. At the administrative hearing in this case, Medley displayed significant symptoms of speech problems and comprehension when being questioned by the ALJ. (Tr. 35-49.)

The medical record contains numerous instances of Medley's stuttering, confusion, word searching, and inability to answer questions during her medical appointments[2]. (Tr. 299, 315, 318,

---

[2] The Court notes that there are duplicate and triplicate copies of Medley's medical records in the certified administrative transcript. The Court will only reference the first instance in the medical records in its citations.

328, 357, 360, 445-46, 463, 474, 477-78.) Medley reported short and long term memory loss at most of her medical appointments in the record. (Tr. 246, 285, 291, 315, 318, 328, 377, 381-82, 387-88, 392-93, 445-46, 474, 477-78, 483, 492, 497, 532.) Although Medley has consistently denied any auditory or visual hallucinations during mental status examinations, her primary care doctor Dr. David Knorr wrote, "sometimes I think she must have an internal dialog (sic) going on because she will just say a sentence that does not really go along with anything else we are talking about." (Tr. 293.)

Medley's friends completed third party statements describing their observations of her speech problems. One friend noted that Medley has problems completing sentences without "fighting to find the right words" and she gets very frustrated at restaurants "because people cannot understand what she is ordering." (Tr. 332-33.) Another friend wrote, "she is unable to speak at times and will substitute incorrect words of what she is trying to express." (Tr. 335.) The friends also described Medley's difficulty ordering food at restaurants and that these difficulties caused anxiety. (Tr. 335-36.) Medley's son's fiancé also completed a third-party function report. (Tr. 205-212.) She wrote that she had known Medley for 19 years and that in the previous year when Medley returned from Georgia, she noticed "a big change in her health, mainly with her thought processing, her speech, and coping with general basic life skills." (Tr. 212.)

Second, Dr. Spencer actually examined Medley and was able to observe the symptoms of memory loss, delay in speech and motor function, and her inability to answer questions. Third, Dr. Spencer, unlike Medley's treating doctors, is a psychologist and an expert in his field. Her treating doctors agreed that the physical examinations were normal and urged her to see a psychiatrist. Finally, Medley has been declared incapacitated by the probate court of Ralls County, Missouri and her daughter has been appointed as her guardian and conservator. (Tr. 57-59.) The

Court declared her totally incapacitated and legally disabled under Mo. Rev. Stat. § 475.078.2[3]. If a person is declared totally incapacitated and legally disabled under § 475.082.2, she is presumed to be incompetent. Mo. Rev. § 475.078.3.

The Court acknowledges that her primary care physician Dr. Knorr and neurologist Dr. Brett Hosley, questioned the severity of Medley's symptoms and whether she put forth her best effort on her mini mental status examinations. (Tr. 318-19, 328-31, 357-58.) Dr. Knorr and Dr. Hosley, both finding no physical cause for her symptoms, recommended psychiatric evaluation and treatment. (Tr. 294, 316, 331, 357-58, 446.) Medley exhibited the symptoms that are the subject of her disability claim with all of her providers. Dr. Spencer's opinion is consistent with that evidence. Although, Dr. Spencer's opinion is not entitled to controlling weight, the factors used to consider medical opinions, indicate that the weight given by the ALJ was not supported by substantial evidence.

### Dr. Stanley Hutson

Dr. Stanley Hutson reviewed Medley's medical records and prepared a report on June 29, 2015. (Tr. 65-71.) Dr. Hutson diagnosed Medley with severe affective and severe anxiety disorder. (Tr. 65.) Dr. Hutson opined that Medley had understanding and memory limitations, and was moderately limited in understanding, remembering, and carrying out detailed instructions. (Tr. 69-70.) He also opined that she was moderately limited in the ability to maintain attention and concentration for extended periods and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 70.) He further found that Medley was moderately limited in the ability to accept instructions and respond appropriately to criticism from

---

[3] This statute was amended effective August 28, 2018. The citation is to the statute effective as of the date of the Court's order on November 21, 2016.

supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. (Tr. 71.) Dr. Hutson opined that Medley had the ability to understand and remember simple instructions and perform routine tasks. (Tr. 71.) Finally, Dr. Hutson opined that she would benefit from having limited social interaction in a work setting. (Tr. 71.)

The ALJ gave significant weight to Dr. Hutson's opinion, because she found that his opinion was supported by Medley's ability to drive, care for herself, attend appointments, engage in work activity[4], and spend time with others during the relevant time frame. (Tr. 22.) The Court finds that the ALJ's assignment of significant weight to Dr. Hutson's opinion is not supported by substantial evidence. The activities of daily living cited by the ALJ such as shopping, driving, and improvement with medication does not outweigh the other evidence in the medical record. To determine whether a claimant has the residual functional capacity necessary to be able to work, the Court looks to whether she has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004). None of the instances cited by the ALJ and the Commissioner's brief indicate Medley's ability to work at a job day in and day out.

**Treating Nurse Practitioner Carol Greening**

Next, Medley contends that the ALJ should have given more weight to the opinion of her board certified psychiatric nurse practitioner Carol Greening. Medley received treatment from

---

[4] The ALJ found that Medley's work activity in 2015 did not rise to the level of substantial gainful activity, per 20 CFR § 404.1571. (Tr. 15.) The ALJ stated that some of the work exceeded the earnings level for substantial gainful activity, but the work could be considered an unsuccessful work attempt as Medley testified she left that employment because she was unable to perform the duties of her job. (Tr. 15.) The ALJ expressed suspicion about Medley's work activity. (Tr. 15.)

Greening on several occasions from October 2015 to August 2016. (Tr. 472-500, 507-527, 531-535.) Greening prescribed Medley medication to treat major depressive disorder without psychotic features, conversion disorder with speech symptom, and alcohol dependence in remission. At her appointments with Greening, Medley reported memory concerns, depression, and some struggles with word selection. Medley showed improvement during the last visits described in the record.

On March 31, 2016, Greening completed a Medical Source Statement Ability to do Work-Related Activities (Mental) regarding Medley. (Tr. 365-67.) Greening indicated that Medley had marked or extreme limitations in every area of functioning on the form. (Tr. 365-66.) Greening indicated that Medley had marked limitations in understanding, remembering, and carrying out simple instructions, making judgments on simple work related decisions, and interacting appropriately with the public and co-workers. (Tr. 365-66.) Marked limitation was defined as a "serious limitation in this area. There is a substantial loss in the ability to effectively function. An assessment of Marked means the impairment will interfere with the individual's ability to perform work-related activities thirty to fifty percent of the time." (Tr. 365.) Greening indicated that Medley had extreme limitations in understanding, remembering, and carrying out complex instructions, making judgments on complex work-related decisions, interacting appropriately with supervisors, and responding appropriately to usual work changes and changes in a routine work setting. (Tr. 365-66.) Extreme limitations were defined as "major limitation in this area. There is no useful ability to function in this area. An assessment of Extreme means the impairment will interfere with the individual's ability to perform work related activities more than fifty percent of the time." (Tr. 365.)

In the narrative portion of the form, Greening wrote that Medley's mood was variable, she had poor memory and recall, and she gets frustrated when unable to express herself. (Tr. 365.)

Greening also wrote that Medley "gets words mixed up" and exhibits "a wrong use of words." (Tr. 365.) Greening wrote that Medley has poor memory and concentration and difficulty following directions. (Tr. 366.) Finally, Greening stated the following "Anne has a lot of difficulty tracking conversations. Seems lost- needs a <u>lot</u> of assistance understanding directions. Also, Anne recently lost her son to a drug overdose- any progress made has been lost. Has difficulty with directions. Has mild neurocognitive disorder as well." (Tr. 367.) (emphasis in original). Greening opined that Medley would be off task 25% or more of the workday and miss work more than four days per month due to her impairments or treatment. (Tr. 366.)

The information provided by Greening must be evaluated as medical source information.

> Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources.* It then divides *other sources* into two groups: *medical sources* and *non-medical sources.* *Acceptable medical sources* include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources

*Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted). Medical sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. 20 C.F.R. § 404.1513(d)(1)[5]. "Information from these other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this

---

[5]The Court again notes that the social security regulations have changed effective March 27, 2017. Because this claim was filed in February 2015, the Court will use the prior versions of the regulations effective at the time that Medley's application for benefits was filed. *See* 20 C.F.R. § 404.1513.

purpose." SSR 06-03p, TITLES II AND XVI: II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS; CONSIDERING DECISIONS ON DISABILITY BY OTHER GOVERNMENTAL AND NONGOVERNMENTAL AGENCIES, 2006 WL 2329939 at *2 (Aug. 9, 2006). The parties do not dispute the existence or type of Medley's medically determinable impairments.

"[I]nformation from such other sources, [however], may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* at 2. "Evidence provided by 'other sources' must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record." *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015); *see also Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (in determining what weight to give to other evidence, the ALJ has more discretion and is permitted to consider any inconsistencies found within the record). Therefore, the ALJ is required to consider Medley's providers' opinions in evaluating her impairments.

In this case, the ALJ gave Greening's opinion little weight. (Tr. 22.) The ALJ stated that the degree of limitation opined by Greening was "at odds with treatment notes for the claimant." (Tr. 22.) The ALJ stated that Medley had generally normal mental status examinations with Greening and on the day that Greening prepared the opinion, Medley was living with her boyfriend, visiting her grandchild regularly, exhibiting cooperative behavior and average eye contact, with only mildly impaired judgment for decisions. (Tr. 22.)

Having reviewed the record, the Court finds that the ALJ's decision to discount Greening's opinion is not supported by substantial evidence. The ALJ mischaracterizes Greening's treatment notes. At all of her appointments with Greening, Medley was described as cooperative and well

12

groomed.  The treatment notes also indicate the following:  depressed mood (Tr. 488, 492, 497), anxious mood (Tr. 474, 478, 483, 492), slow or stuttered speech (474, 478), memory impairment (474, 478, 483, 492, 497), impaired judgment (Tr. 478), tangential thoughts (Tr. 483), and impaired concentration (Tr. 492).  At her last visit, highlighted by the ALJ, her mental status examination indicated sad mood, impaired memory, minimal insight, and mildly impaired ability to make reasonable decisions.  (Tr. 508.)  Further, the narrative portions of the treatment records indicate more impairment than the ALJ identifies in her opinion.  Therefore, the Court finds that the ALJ should have given more weight to Greening's opinion.  Because the ALJ improperly weighed the medical opinions and medical source information, this case will be remanded for a re-evaluation of the provider's and consultative examiners' opinions.  Then, the ALJ should prepare a new RFC determination, including a reevaluation of how much Medley would be off task during the workday.

**Failure to Develop the Record**

Finally, Medley states that the ALJ failed to develop the record in this action, because she did not subpoena Dr. Knorr's medical opinion submitted for the eventually successful petition to declare Medley legally incapacitated and disabled.  The disability hearing office requested the records from Dr. Knorr, but his office was unable to locate a copy.  (Tr. 237.)  No further effort was made to obtain the records.  Medley's counsel informed the SSA that he did not represent Medley regarding the guardianship appointment and he had no access to those records.  (Tr. 238.)

The ALJ has a duty to fully develop the record.  *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006).  In some cases, this duty requires the ALJ to obtain additional medical evidence before rendering a decision.  *See* 20 C.F.R. § 404.1519a(b).  "There is no bright line test for determining when the [Commissioner] has failed to develop the record.  The determination in each case must

be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). The ALJ's

duty to develop the record extends even to cases where an attorney represented the claimant at the

administrative hearing. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). "The ALJ possesses

no interest in denying benefits and must act neutrally in developing the record." *Snead*, 360 F.3d

at 838. The Commissioner and the claimant's attorney both share the goal of ensuring that

deserving claimants who apply for benefits receive justice. *Battles v. Shalala*, 36 F.3d at 44. The

ALJ's duty is not never-ending and an ALJ is not required to disprove every possible impairment.

*McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

In this case, the ALJ commented, "To the extent this [the guardianship appointment] may

be true, the undersigned is not bound by such a finding." (Tr. 23.) The ALJ is correct, social

security disability determinations are based on social security law. 20 C.F.R. § 404.1504. The

ALJ is not bound by disability decisions made by other governmental or nongovernmental

agencies[6]. 20 CFR § 404.1504. Evidence of a disability decision by another governmental or

nongovernmental agency cannot be ignored, however, and must be considered. SSR 06-03p, 2006

WL 2329939 at *6. "These decisions, and the evidence used to make these decisions, may provide

insight into the individual's mental and physical impairment(s) and show the degree of disability

determined by these agencies based on their rules." *Id.* at 7. "[T]he adjudicator should explain

the consideration given to these decisions in the notice of decision for hearing cases and the case

record for initial and reconsideration cases." *Id*. at 7. The ALJ's remarks questioning the

authenticity of the Court's order and then flippantly stating that she is not bound by any other

disability finding is not sufficient under the facts of this particular case to indicate that she

considered this evidence. It is almost inconceivable why a court of law's finding that a person is

---

[6] Although a court of law is not "a government agency," the Court agrees that the standards for finding disability
under Social Security regulations and a finding of disability and incapacity under Missouri state law are different.

legally disabled and incompetent to handle her affairs would not be considered relevant to a SSA disability claim. Such a finding is relevant in this case, because the ALJ uses Dr. Knorr's earlier treatment notes to discredit Medley. Later, Dr. Knorr wrote a medical opinion supporting the petition for guardianship. Because the Court is remanding this action on other grounds, upon remand, the ALJ is instructed to attempt to obtain a copy of Dr. Knorr's opinion from the probate court and consider this evidence as required under the regulations.

**Conclusion**

Based on the foregoing, the Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court has the power to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. 405(g). When a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings. *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000).

"Where the total record convincingly establishes disability and further hearing would delay the receipt of benefits, this court has ordered the immediate award of benefits without further delay." *Blakeman v. Astrue*, 509 F.3d 878, 889 (8th Cir. 2007) (dissent, J. Bye). That standard has not been met here. Therefore, the Court will reverse and remand the Commissioner's decision. Upon remand, the Commissioner should give more weight to the opinions of the consultative examiner and treating provider who actually examined Medley and whose opinions were consistent with the record as a whole. The ALJ should give less weight to Dr. Hutson's opinion. The ALJ should also make a legitimate attempt to locate Dr. Knorr's opinion that was submitted

to the probate court and consider it along with the other evidence when formulating a new RFC determination.

The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance. *See Buckner*, 213 F.3d at 1011 (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination). Because Medley first applied for benefits in 2015, and it is now 2019, the Commissioner is urged to begin proceedings without delay and resolve this case as soon as possible.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Medley seeks in her Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part**. [Docs. 1, 12, 24.]

**IT IS FURTHER ORDERED** that the ALJ's decision of March 21, 2017 is **REVERSED** and **REMANDED**.

**IT IS FURTHER ORDERED** that upon remand, the Commissioner should give more weight to the opinions of the consultative examiner and treating provider who actually examined Medley and whose opinions were consistent with the record as a whole. The ALJ should give less weight to Dr. Hutson's opinion. The ALJ must also use her best efforts to obtain Dr. Knorr's medical opinion that was submitted to the probate court in Ralls County, Missouri. Then, the

Commissioner must develop a new RFC determination regarding Medley's mental health impairments.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

Dated 11th day of March, 2019.

      /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE